UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TINA N. GIAIMO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:20-cv-00596-AGF |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Tina Giaimo was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381-1383f.  For the reasons set forth below, the decision of the Commissioner will be affirmed.

### BACKGROUND

The Court adopts the facts set forth in Plaintiff's statement of material facts (Doc. 25) and Defendant's response and statement of additional facts (Doc. 30, Ex. 1 & 2), which together provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in this suit.

Plaintiff was born on August 28, 1971 and worked as a waitress from 1992 until 2017. Plaintiff protectively filed an application for benefits on January 25, 2017, alleging a disability beginning April 2, 2016 (later amended to February 28, 2017), due to degenerative disc disease, rheumatoid arthritis, fibromyalgia, depression, anxiety, and other ailments. Her application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge (ALJ). On November 27, 2018, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert (VE). On March 25, 2019, the ALJ issued a decision finding that Plaintiff had the residual functional capacity (RFC) to perform certain jobs that exist in significant numbers in the national economy and was thus not disabled under the Act. The ALJ found that Plaintiff had the RFC to perform sedentary work, as defined by the Commissioner's regulations, with the following limitations:

> [She could] never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently reach handle, finger, and feel bilaterally; must avoid concentrated exposure to excessive vibration, extreme heat, and extreme cold; must avoid all exposure to workplace hazards; limited to simple, routine, and repetitive tasks; limited to a low stress job, defined as occasional decision making and occasional changes in work setting; occasional interaction with the public, coworkers, and supervisors; she must have a sit stand option, defined as allowing her to stand up, move about, stretch, or change positions for 1 minute every 15 minutes.

Tr. 16.

The ALJ next found that Plaintiff could perform certain sedentary unskilled jobs listed in the Dictionary of Occupational Titles (DOT) (e.g., addressor, document preparer, ampoule sealer), which the VE had testified that a hypothetical person with Plaintiff's

2

RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act. On March 3, 2020, the Appeals Council denied Plaintiff's request for review. Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision is the final decision of the Commissioner for this Court's review.

On judicial review here, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's credibility, and more specifically failed to properly weigh the evidence supporting Plaintiff's subjective complaints about the limiting effects of her pain.

**The ALJ's Decision (Tr. 11-21)**

The ALJ found that Plaintiff has the following severe impairments: rheumatoid arthritis, fibromyalgia, degenerative disc disease of the lumbar and cervical spine, generalized anxiety disorder, and major depressive disorder. However, he found that none of these impairments, alone or in combination, met or medically equaled the severity of impairments listed in the Commissioner's regulations.[2]

Applying "paragraph B" criteria to Plaintiff's mental impairments, the ALJ found that Plaintiff had moderate limitations in three categories (understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace) and a mild limitation the fourth category (adapting or managing

---

[2] The ALJ further noted non-severe impairments of gastrointestinal reflux disease, epigastric pain, and sleep apnea. Plaintiff does not challenge the ALJ's findings in these respects.

3

oneself).  The ALJ further noted that "paragraph C" criteria are not present here.[3]

After review of the entire record, the ALJ found that Plaintiff has the RFC to perform sedentary work with the limitations described above.  In support of that determination, the ALJ summarized the following evidence.

Plaintiff testified that she is unable work due to chronic and severe pain in her feet, neck, back, hands, and shoulders.  She said she cannot sit for prolonged periods and needs to change positions every five to fifteen minutes.  Her "primary complaints are chronic pain and fatigue from rheumatoid arthritis and fibromyalgia."  Doc. 24 at 4.  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence in the record.

With respect to Plaintiff's pain symptoms from fibromyalgia and rheumatoid arthritis centrally at issue here, the ALJ found that those symptoms were less limiting than Plaintiff alleged and do not prevent full-time work.  He noted that her fibromyalgia is treated with various pain medications, and her clinical examinations with her pain specialist were completely normal aside from tenderness (i.e., normal gait, no muscle

---

[3] When paragraph B criteria are not satisfied, the relevant listings also have additional functional criteria known as "paragraph C criteria," used to evaluate "serious and persistent" mental disorders.  Paragraph C criteria require a medically documented history of the existence of the disorder for at least two years, with evidence of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's disorder and (2) marginal adjustment, meaning a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life.

spasms, full range of motion in all extremities, negative straight leg raises, intact sensation throughout).  From the medical imaging, the ALJ noted mild degenerative disc disease of the lumbar and cervical spine with no spinal stenosis, degenerative changes in several toes with unchanged erosion in the left big toe, and mild bilateral dorsal soft tissue swelling in the wrists with no erosion.  The ALJ found that none of these images indicate debilitating conditions.  Plaintiff's rheumatologist, Dr. Deepali Sen, noted mostly normal findings including mild PIP swelling, no focal motor or sensory deficits, no peripheral edema, no synovitis, no evidence of joint inflammation, and tenderness to palpitation of all MTP joints.  The ALJ further noted that Plaintiff's medications have been "remarkably effective" in treating her arthritis, which her provider noted was "well controlled."  Based on this evidence, the ALJ concluded that he adequately addressed her pain symptoms by limiting the RFC to a reduced range of sedentary work with additional postural and environmental accommodations, with the option to change positions for one minute every 15 minutes.

Next, the ALJ found that Plaintiff's depression and anxiety are less limiting than she alleged insofar as the findings of her pain psychologist, Dr. Stephen Ristvedt, were routine and unremarkable (e.g., intact memory, normal attention and concentration, good insight and judgment, good eye contact, cooperative attitude, clean appearance).  The ALJ concluded that he adequately addressed Plaintiff's depression and anxiety by limiting the RFC to simple, routine, repetitive tasks and only occasional interaction with others.

The ALJ also reasoned that Plaintiff's self-reported daily activities were

5

inconsistent with allegations of debilitating pain in that Plaintiff lives alone, feeds and cares for her cat, prepares simple meals, can go out alone and drives a car to appointments and the store and pharmacy, watches television, listens to music, and has no problem getting along with others.[4]

The ALJ then discussed the opinion evidence in the record.  State agency medical consultant Dr. Judee Bland issued an opinion in May 2017 indicating that Plaintiff could perform a reduced range of sedentary work with certain limitations.  Tr. 76-80.  More particularly, Dr. Bland opined that Plaintiff could stand or walk up to two hours in an eight-hour day, could sit for a total of six hours (with normal breaks), and could reach overhead only frequently due to neck and shoulder pain.  The ALJ gave this opinion partial weight as it was consistent with evidence of tenderness but no joint inflammation or synovitis, no motor deficits, and normal gait and range of motion.  However, the ALJ found that additional limitations were warranted to account for Plaintiff's difficulty using her hands, so he limited Plaintiff's handling, fingering, and feeling to only frequent.

In another opinion from May 2017, State agency psychologist Dr. Robert Cottone opined that Plaintiff had moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining page, and that Plaintiff had only mild limitations in interacting with others and adapting or managing herself.  Tr. 74.  The ALJ gave this opinion significant weight as it was consistent with

---

[4] Though not mentioned by the ALJ, treatment notes reflect that Plaintiff was spending more time with her five-month-old granddaughter in September 2017 (Tr. 968), and by mid-to-late 2018 she was babysitting and helping to take care of her granddaughter.  Tr. 882, 885, 891.

normal mental status examinations by Plaintiff's psychologist and other providers and the minimal nature of psychiatric treatment in the record.

Plaintiff's primary care physician, Dr. Peggy Boyd-Taylor, opined in June 2018 that Plaintiff was incapable of sustained lifting, carrying, sitting, standing, or walking, and that Plaintiff could not frequently use her upper extremities for reaching, pushing, or pulling. The ALJ gave this opinion little weight because it was inconsistent with the overall record, including the imaging and numerous clinical examinations noting regions of tenderness but no joint inflammation or motor deficits and normal gait and range of motion. The ALJ also referred to rheumatology progress notes indicating that Plaintiff's joint symptoms are "well controlled" with medication, undermining the assertion that her arthritis is severe.

Plaintiff's rheumatologist, Dr. Deepali Sen, opined in July 2018 that Plaintiff's arthritis caused "significant damage" to her joints; she could lift and carry only ten pounds; she could not stand or walk for sustained periods; she needed to alternate standing and walking every 20 minutes; she would require at least two hours of rest in a workday; but she could frequently use her upper extremities for reaching, pushing, pulling, gross manipulation, handling, fingering, and feeling.[5] Tr. 460. The ALJ found these opinions regarding Plaintiff's limitations inconsistent with Dr. Sen's own treatment notes, which contained normal clinical findings including mild PIP swelling, no focal motor or sensory deficits, no peripheral edema, and no evident of joint inflammation or

---

[5] Dr. Sen's opinion regarding reaching, pushing, and pulling conflicts with the limitations noted by Dr. Boyd-Taylor.

7

synovitis.  The ALJ again noted that Plaintiff's symptoms are controlled with medication, and other medical providers observed no motor or sensory deficits, a normal gait and range of motion, and no muscle spasms.  As such, the ALJ found no support in the record for the restrictive limitations in Dr. Sen's opinion.

 Finally, Plaintiff's therapist, Peter Walker, MSW, opined that Plaintiff had marked to extreme mental limitations in several categories (e.g., ability to carry out instructions, maintain work schedule and focus, adhere to socially appropriate behavior, adapt to changes in work setting, work independently).  Tr. 451-452.  The ALJ gave this opinion little weight because it appeared to be based on Plaintiff's self-reporting and was inconsistent with normal mental health status examinations and minimal psychiatric treatment.

 Based on the foregoing evidence, the ALJ found that Plaintiff had the RFC to perform sedentary work with the limitations previously described.  Next, the ALJ referred to the VE's testimony that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) would be able to perform representative jobs listed in the DOT such as addressor, document preparer, ampoule sealer, which the VE stated were available in significant numbers in the national economy.  Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

 In her brief before this Court, Plaintiff contends that the ALJ failed to properly evaluate her credibility, specifically whether the evidence supported her subjective complaints regarding the limiting effects of her pain from rheumatoid arthritis and fibromyalgia.  Plaintiff asks that the ALJ's decision be reversed and remanded for an

8

award of benefits or further evaluation.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant

9

cannot perform his past relevant work, the burden of proof shifts to the Commissioner at step five to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the agency's burden at step five. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply

because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**Analysis**

In her sole point of error, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's credibility, meaning whether the evidence supports Plaintiff's subjective complaints as to the limiting effects of her symptoms. 20 C.F.R. § 404.1529. As Plaintiff correctly notes, SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p. However, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's subjective complaints. *See e.g., Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (noting that credibility determinations are the province of the ALJ).

Plaintiff argues that her credibility was central to the ALJ's RFC assessment and that the ALJ improperly relied on Plaintiff's daily activities as illustrative of her capacity to perform full-time work. *See Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (instructing that a person's ability to engage in chores and hobbies does not demonstrate an ability to work). The Court does not agree with this characterization. While the ALJ

11

acknowledged Plaintiff's self-reported complaints and limited activities,[6] the ALJ relied primarily on the medical evidence in the record, repeatedly citing imaging results, normal clinical findings, and the successful management of symptoms with medication. In other words, even accepting Plaintiff's premise that the ALJ exaggerated her domestic capabilities, these were not central to the ALJ's determination of her ability to work. Rather, the ALJ relied principally on the lack of medical evidence indicating severe limitations.

Plaintiff also argues that the ALJ overlooked the fact that she rarely reaches, handles, or fingers in her daily activities, yet she still experiences mild swelling in her hands. But the ALJ provided an accommodation in the RFC by limiting bilateral reaching, handling, fingering, and feeling to only frequent. Dr. Sen cited no limitations in these areas (Tr. 460), and the ALJ's RFC provides even more accommodations than those recommended in Dr. Bland's opinion. Tr. 78. Though the RFC assessment draws from medical sources for its support, ultimately it is an administrative determination reserved to the Commissioner. *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018).

Additionally, Plaintiff argues that the ALJ mischaracterized Dr. Ristvedt's findings as "routine" in that certain treatment records show agitation, fidgeting, and pain behavior supporting Plaintiff's claims. But Dr. Ristvedt was providing cognitive

---

[6] The Court notes that some of Plaintiff's allegations of inability or lack of desire for self-care are inconsistent with treatment records repeatedly noting Plaintiff to be well-groomed and exhibiting appropriate dress and speech.

behavioral therapy for depression and anxiety. The ALJ reasonably found Dr. Ristvedt's clinical findings "routine" based on consistent observations that Plaintiff had intact memory, normal attention and concentration, good insight and judgment, regular speech (though occasionally pressured), logical thought process, calm behavior, good eye contact, a cooperative attitude, and a neat appearance. Tr. 18 (citing Tr. 635, 739, 956, 958. 964, 981, 984). Moreover, the ALJ is not required to discuss every piece of evidence in the record, and his failure to cite specific evidence does not indicate that he did not consider it. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). While the ALJ did not specifically note these particular pain behavior findings by Dr. Ristvedt, the ALJ did recognize the medical evidence of Plaintiff's tenderness, degenerative changes, and soft tissue swelling (Tr. 17), and he accommodated for Plaintiff's pain in the RFC by limiting her to sedentary work with a sit-stand option.

Similarly, Plaintiff contends that the ALJ discounted the opinion of Mr. Walker (Plaintiff's therapist) discussing Plaintiff's anxiety and depression and a letter by Michelle Salois, LCSW, confirming Plaintiff's pain behavior consistent with her self-reports. Again here, the ALJ is not required to discuss every piece of evidence and is free to assign proper weight. The ALJ did not disregard Plaintiff's pain or mental impairments but incorporated them into the RFC with appropriate limitations.

Finally, Plaintiff submits that her complaints of pain are supported by the opinions of her treating physicians, Drs. Sen and Boyd-Taylor. The ALJ considered these opinions but did not find them persuasive to the extent they recommended excessive

13

limitations not supported by the record as a whole, including imaging, clinical examinations, and the effectiveness of medications.

Put simply, the ALJ considered Plaintiff's subjective complaints but did not find objective support in the record for her alleged *degree* of limitation.  While this Court must take into account evidence that both supports and detracts from the ALJ's decision, as long as substantial evidence in the record supports the Commissioner's decision, the Court may not reverse merely because other evidence would have supported a contrary outcome.  *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).  The Court will not substitute its own judgment for that of the ALJ, who is in a superior position to gauge credibility and resolve conflicts in the evidence.  *Nash*, 907 F.3d at 1090.  The Court must defer to the ALJ's determination as long as good reasons and substantial evidence support the ALJ's evaluation.  Mindful of these principles, Court finds the ALJ's decision supported by substantial evidence and well within the available zone of choice.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September 2021.